No. 34.—JOHN JOHNSON, Ordinary &c. of Muscogee County, plaintiff in error, *vs.* THE GOVERNOR, *ex rel.,* FRANCIS J. ABBOTT and others, defendants in error.

[1.]   An Act to authorize and require the Treasurer of the Poor School Fund, in the County of Muscogee, to pay, before any other claims, over to certain teachers of poor children in said County, for the years 1851 and 1852, out of the poor school fund thereof, the full amount of their accounts, and all arrearages due them for teaching poor children in said years, out of any funds now in hand, or out of the first that may be received, approved January 10th, 1854: *Held,* not to impair the obligation of any legal contract, and therefore is not unconstitutional.

[2.] The Act of 1852, making the Ordinary a Commissioner for the poor school fund, does not require, that if there be not enough funds in hand, at the end of each year, to pay the teachers in full, the balances due them are to be postponed until the teachers of ensuing years are paid out of the funds of the year in which their services are rendered. But the amount of each teacher's account for the current year, fixed according to the rates prescribed in that Act, after all older and just claims have been paid, is to be paid *in full*, if there be enough to pay in full; if not, *ratably* : and the balances due stand in order to be paid out of the taxation of the next year, before the accounts of teachers for services rendered in that year.

[3.] The claims of the teachers of 1851 and 1852, in Muscogee County, on which only a ratable proportion has been paid, have not been satisfied in full, because there were not funds enough raised, by taxation, during these years, to pay them ; but the unpaid balances are just and valid claims against the State, which may be justly paid as directed by the Legislature in the Act of 1854, out of any funds now in the hands of the Treasurer, or the first which may be received by him.

Mandamus, in Muscogee Superior Court. Decision by Judge WORRILL, June adjourned Term, 1854.

The General Assembly of 1853–4, passed an Act authorizing and requiring the Treasurer of the Poor School Fund of Muscogee County, to pay to each and all teachers of poor children, for the years '1851 and 1852, out of the poor school fund, the *full amount* of their accounts, and all arrearages due them, out of any funds in hand or the first that may be received.

Francis Abbott, a teacher of poor children for the year 1853, prayed a mandamus against Johnson, the Ordinary and *ex officio* Commissioner of poor school fund, requiring him to show cause why he did not pay over to him the amount of his account from the fund of 1853. Johnson returned to the mandamus these facts: That he had in hand from the poor school tax, recommended and assessed for 1853, and from the State poor school fund, sufficient to pay the teachers for 1853, *five* cents per day for each scholar. But that under the before-mentioned Act of 1853–4, the teachers for 1851 and 1852, claimed to be paid out of this fund ; that the failure of the Spring Term of the Superior Court of Muscogee, for 1852, rendered it impossible to lay a poor school tax for that year ; and hence, the failure to pay the teachers for that year. He prayed the

direction of the Court as to his duty in the premises, and especially as to the mode of auditing the accounts. The Court directed the fund to be paid to the teachers for the year 1853.

This decision is assigned as error.

INGRAM and CRAWFORD, for plaintiff in error.

W. WILLIAMS, for defendant in error.

*By the Court.*—STARNES, J. delivering the opinion.

This is a contest between teachers of poor children in the County of Muscogee, for the years 1851, 1852 and 1853, in relation to a fund in the hands of the Ordinary, raised by taxation of the year 1853.

We think that it is to be inferred from the record before us, that the teachers of 1851 and 1852, have not been paid the amount of their claims upon the county, in full. That record shows that the accounts of the teachers of 1851 were audited by the Inferior Court, and paid according to the order of that Court, by the County Treasurer—some of them at the rate of $4\frac{1}{4}$ cents a scholar, per day, and certain of them receiving specific amounts. The balance due on claims of these persons, is not shown; but it appears that such a balance exists.

By reason that the Superior Court did not hold a session, in Muscogee County, in the Spring of 1852, and of the consequent failure on the part of the Grand Jury to make the necessary recommendation, the proper fund was not raised for that year; and the teachers of the year have been paid 1 cent and 6 mills a scholar, per day, only; and there is, therefore, a balance not paid to them for their services during that year.

Before January, 1852, this subject was regulated by the provisions of the Act of 1843, and payments were made by the commissioners according to the amount of the poor school fund in hand, and on such terms as were determined by the commissioners. But the law seems not to have fixed any rate of charges by which such teachers were to be regulated.

The Statute of 1852 gives this whole matter into the care of the Ordinary, as commissioner, and fixes a rate of charges, viz: *the rates shall not exceed the amounts usually charged by the teacher, nor such maximum as may be established by the Ordinary in each county.*

Two objections are suggested by the relator, as lying in the way of carrying this Act of 1854 into effect—and one seems to have occured to the Ordinary.

1. It is said that the Act is contrary to the 10th section of the 1st Art. in the Constitution of the U. States as impairing the obligation of a contract.    2. It is said that the accounts of 1851 and 1852, have been paid in full.

[1.] The first objection is not tenable, because there is no such contract as is supposed. No pledge has been made by the State, upon the faith of which these teachers have acted, that they were to be paid out of the taxation of 1853. The Ordinary may have put this construction upon the Act of 1852, and he may have made agreements with certain of these teachers, that for their services, they shall be paid out of the fund of that year; and the effect of this Act of 1854 may be to defeat such stipulations. But if the State has pledged itself to no such stipulation, the Ordinary had no authority to bind the State to any such agreement, and no contract to this effect binding on the State has been made.

The Act of 1852 declares, that the Ordinary "shall pay teachers of poor children in the following manner, that is to say: he shall keep on file every such account for the tuition of children on the list for each year, as shall be rendered to him, on or before the 25th day of December, in that year, proven by the oath of the teacher, specifying the number of days each child was taught, not exceeding the usual rates of such teacher, nor exceeding such maximum as may be established by the Ordinary in each county; and after the 25th day of December, he shall proceed to pay all such accounts in full, if the funds in hand be sufficient, or ratably, if insufficient, and always keeping as a fund for the next year, any surplus which may be left."

[2.] Now we think that a proper construction of these provisions does not make it necessary for us to say, that if there be not enough funds in hand at the end of each year to pay the accounts of the teachers for each year in full, the balances due then, are to be postponed until the teachers of ensuing years. are paid out of the funds of the year in which their services are rendered.   This might be to postpone the payment of such balances forever.   But our construction of this Act is, that the amount of each teacher's account is to be fixed in the way prescribed; that out of the fund in the Ordinary's hands, after all older and just claims have been paid, the teachers for the current year shall be paid—*in full,* if there be enough to pay them in full, if not *ratably;* and the balances due shall stand in order to be paid out of the taxation of the next year, before the accounts of teachers for services rendered in that year. And so on from year to year—the first services will be first paid.   This is certainly the just and equitable rule.   In all similar cases of claims, *the first in point of time, is superior in Equity.*   And we know not why this poor laborer should not be as worthy of his hire, as others, and equally entitled to have the benefit of the principles of justice.

In this view of the matter, if the Ordinary has contracted with the teachers of 1853, and agreed to pay them out of the fund of that year, if there be sufficient in his hands for this purpose, and in preference to older claims, he has transcended his authority, and the act is not binding on the Legislature. And not being so, in the same spirit of equity and justice to which we have referred, the Legislature had the right to say, as they have said, by the Act of 1854, that the oldest accounts shall be first paid.

[3.] The relator insists also, that the accounts of these teachers for the years 1851 and 1852, have been paid and satisfied in full.

We believe it is not denied, that they have beeen paid a *ratable* proportion, only, of what they were entitled to charge; and it is insisted that they have been paid in full, only because, according to the construction which the relator placed upon the

law, each set of teachers for a particular year were required to be paid out of the fund raised for that year.   And the fund for those two years being exhausted by the payments which had been made, there was nothing left out of which these teachers might be paid.

Such is not the construction which we place upon the law. The whole debt was due the teachers.   Only a ratable proportion was paid.   The debt was due by the State.   The State owns all the funds raised by taxation, out of which poor teachers are to be paid, and if the Legislature, by the Act of 1852, has not authorized the Ordinary to pay the teachers of each year, first out of the funds raised in that year; (and we have shown, that it has not done so) then it had the perfect right, and it was its duty, to direct that payment should be made out of such fund in the hands of the Ordinary, to its creditors, these teachers.

As to the difficulty suggested by the Ordinary, that the Act of 1854 does not provide a rate of payment or measure of value, by which the teachers of 1851 and 1852 are to be paid, we remark, that the Act of 1852 provides the rule which we have already stated, that such teachers shall be paid according to rates which do not exceed the amounts usually charged by the teacher, nor such maximum as may be established by the Ordinary in each county.   And as the act of 1854, under consideration, is in *pari materia* with that of 1852, it is fair to presume, that the rule provided by the latter was in the Legislative mind, because it is a reasonable and just rule; and hence, the Ordinary may adopt it, in our opinion, in settling with the teachers of 1851, under the directions of the Act of 1854.

Judgment reversed.